*152 EFFRON, Senior Judge,
with whom RYAN, Judge, joins (dissenting):
The military judge in the present ease erroneously informed Appellant that it made no difference whether the child pornography images at issue depicted actual or virtual children. In providing this erroneous information to Appellant, the military judge overlooked a critical difference in the penalty landscape at the time of Appellant’s trial. At that time, the two offenses at issue carried a combined authorized punishment of thirty years of confinement for the distribution and possession of images involving actual children. United States v. Finch, 73 M.J. 144, 146 n. 4 (C.A.A.F.2014). By contrast, if the depictions consisted of virtual images, the combined authorized punishment at the time of Appellant’s trial was only eight months of confinement. Id. at 147-48. The majority concludes that the erroneous statement by the military judge — equating actual and virtual images — constituted an insubstantial error under the circumstances of this case. For the reasons set forth below, I respectfully dissent.

The evolving treatment of actual and virtual images under military law

The federal criminal code treats child pornography offenses as serious crimes, punishable by lengthy periods of confinement. See 18 U.S.C. § 2252A (2012). Although the Uniform Code of Military Justice (UCMJ) does not contain an article that expressly addresses child pornography, such offenses are prosecuted in courts-martial under Article 134, UCMJ, 10 U.S.C. § 934 (2012), which prohibits conduct that is prejudicial to good order and discipline, conduct that is service discrediting, and conduct that violates federal criminal statutes.
In United States v. James, 55 M.J. 297 (C.A.A.F.2001), we upheld a court-martial conviction under a federal child pornography statute that prohibited the possession of child pornography regardless of whether the pornography depicted actual children or computer-generated images of “virtual” children. Our decision was consistent with the views expressed by a majority of other federal courts of appeals that had considered the issue at that time. See id. at 299-300. Subsequently, however, the Supreme Court held that the restrictions on pornographic materials involving actual children could not be applied to computer-generated simulations or images under the First Amendment. Ashcroft v. Free Speech Coal., 535 U.S. 234, 249-56, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).
In United States v. O’Connor, 58 M.J. 450, 454-55 (C.A.A.F.2003), we recognized that the Supreme Court’s decision established binding precedent with respect to application of the federal criminal statute, but we left open the possibility that child pornography offenses involving virtual images could be prosecuted under other provisions of military law. In United States v. Mason, 60 M.J. 15, 20 (C.A.A.F.2004), we held that under military law, the receipt or possession of virtual child pornography, as well as actual child pornography, could constitute conduct prejudicial to good order and discipline or service discrediting conduct under the first and second clauses of Article 134, UCMJ, depending on the facts of the case.

The evolving contours of the penalty landscape

During the eight-year period that followed our 2004 decision in Mason, including the period of time covered by the trial in the present appeal, the President did not exercise the authority provided by Article 56, UCMJ, 10 U.S.C. § 856 (2012), to establish maximum punishments for specific forms of child pornography offenses. In the absence of express attention under Article 56, UCMJ, military judges and the appellate courts were required to apply general guidance in the Manual for Courts-Martial in order to ascertain the maximum punishments available under military law for different forms of child pornography offenses. See Rule for Courts-Martial (R.C.M.) 1003(c)(1)(B); United States v. Leonard, 64 M.J. 381, 383-84 (C.A.A.F.2007) (concluding that R.C.M. 1003(c)(l)(B)(ii) authorized confinement for up to fifteen years in a case involving receipt of actual child pornography); Finch, 73 M.J. at 146 n. 4 (noting the current authority for confinement of up to twenty years for distribution of actual images and confinement of *153 up to ten years for receipt of actual images); United States v. Beaty, 70 M.J. 39, 44-45 (C.A.A.F.2011) (concluding that the rule authorized a maximum punishment of four months of confinement and associated penalties in a ease involving virtual child pornography).
Subsequent to Appellant’s trial — and subsequent to Mason, Leonard, and Beaty — the Manual for Courts-Martial was amended to address expressly actual images and virtual images (i.e., images of “what appear[ ] to be minors,” Beaty, 70 M.J. at 40, 43). See Manual for Courts-Martial, United States Analysis of the Punitive Articles app. 23 at A23-22 (2012 ed.) (MCM). Under the amended version of the Manual, which is now in effect, actual and virtual images are treated as the same for punishment purposes. MCM pt. IV, para. 68b.c.(1). Offenses such as possessing, receiving, and viewing child pornography are subject to a maximum of ten years of confinement per offense, regardless of whether the images are of actual children or images of virtual children. Id. at para. 68b.e.(l). Periods of greater confinement are authorized for offenses involving aggravating circumstances: fifteen years for possession with intent to distribute, twenty years for distribution; and thirty years for production. Id. at paras. 68b.e.(2)-(4). The new rules, which equate actual and virtual child pornography, reflect the reality of modern imaging technology. Persons with only modest skills can produce virtual images that, from the perspective of the viewer, are infused with such vitality that they “appear to be” real.
But Appellant was not tried under the new rules. At the time he was tried, the offenses involving actual and virtual images were not equated. Instead, the penalty landscape presented vast differences in authorized punishments on the two specifications involving child pornography offenses. At the time of Appellant’s trial, the two offenses at issue carried an authorized punishment of thirty years of confinement for the distribution and possession of actual images, but only eight months of confinement for images involving virtual depictions.

Consideration of the relationship between actual and virtual images during Appellant’s trial

Given the vast disparity in the consequences associated with the offenses under the law in effect at that time, it was incumbent upon the military judge to engage in a plea colloquy that accurately informed Appellant of the nature of the offenses and the penalty landscape. See R.C.M. 910(c)(1). In this case, the military judge erroneously told Appellant that it would make no difference whether the images were actual or virtual. Finch, 73 M.J. at 146. In so doing, he left Appellant with the misleading impression that there was no legal difference between actual and virtual images when, in fact, the difference was dramatic. At no point did the military judge provide any information to Appellant to rectify this error.
An error by the military judge in misadvis-ing an accused on matters affecting the maximum sentence does not necessarily amount to the type of substantial misunderstanding that will invalidate a plea. See, e.g., United States v. Walker, 34 M.J. 264, 266 (C.M.A.1992). The analysis is contextual. Id.
The majority concludes that there was no substantial misunderstanding, viewing the record as demonstrating a context in which all present understood that the case involved images of actual children. In support of this proposition, the majority cites defense counsel’s agreement with the military judge that the maximum punishment was thirty years. Finch, 73 M.J. at 148-49. Defense counsel, however, did not object to or correct the military judge and did not offer any views as to the considerable differences between actual and virtual images. To the extent that the exchange between the defense counsel and the military judge proves anything, it merely demonstrates that the defense counsel and the military judge shared the same misunderstanding of the relationship between actual and virtual images — a matter involving a vast difference in the penalty landscape and that was never explained on the record to Appellant.
The majority also eités the use of phrases in the plea colloquy such as “person,” “child,” *154 “underage,” “individuals ... [whose] bodies were not developed,” and “minors engaging in sexually explicit conduct” as demonstrating an understanding by the military judge and Appellant that the colloquy involved actual rather than virtual images. Id. at 149. The military judge’s own words refute the majority’s theory. He expressly used the words “persons” in describing virtual pornography when he erroneously equated actual and virtual images by referring to “visual depictions containing sexually explicit images of persons indistinguishable from minor children, whether actual or virtual.” Id. at 146 (emphasis added).
In that context, where the military judge expressly advised Appellant that virtual images constituted depictions of “persons indistinguishable from minor children,” nothing in Appellant’s use of similar words would provide a basis for concluding that Appellant was referring only to actual children. Id. Given the graphic reality that can be achieved in the production of virtual images, the fact that participants in a plea colloquy used such language does not demonstrate that they were referring to actual or virtual images.
The current Manual for Courts-Martial repeatedly uses similar words to describe both actual and virtual images. See, e.g., MCM pt. IV, para. 68b.c.(l) (defining child pornography as the “visual depiction of a minor engaging in sexually explicit conduct”); id at para. 68b.c.(4) (defining a minor as a “person under the age of 18 years”); id. at para. 68b.c.(7) (defining various forms of sexually explicit conduct as occurring “between persons of the same or opposite sex” or involving “lascivious exhibition of the genitals or pubic area of any person”).
The amended Manual does not govern the ease before us, but the use of such language in the current Manual to describe both actual and virtual images — like the use of such words by the military judge at trial — refutes the majority’s view that the plain meaning of such words refers only to actual images. The Manual, in its routine use of words like “individuals” and “persons” to describe both actual and virtual images of sexual conduct, demonstrates that the plain meaning of these words can encompass both. The use of these words during the plea colloquy does not demonstrate either an express or implicit understanding by the military judge or Appellant that the images at issue in the present case only involved images of actual children.
The defective plea inquiry in this case involves a set of circumstances that would not affect a plea under current law. The plea inquiry in this ease, however, demonstrates a substantial and uncorrected error by the military judge with respect to the law at the time of Appellant’s trial, rendering the plea improvident. Under these circumstances, the Court should set aside the findings and sentence, and remand the case for a rehearing.